IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| MALCOLM LEE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV-00-TMP-0429-J ) |
| SHERIFF JOHN MARK TIREY and CHIEF JAIL ADM. TRENT McCLUSKEY, | ) ) ) |
| Defendants. | ) ) |

ENTERED
APR 10 2002

## MEMORANDUM OF OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, an inmate proceeding *pro se*, complains that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration in the Walker County Jail in Jasper, Alabama. Plaintiff names Sheriff John Mark Tirey and Chief Jail Administrator McCluskey as defendants and alleges that Tirey and McCluskey violated his Eighth Amendment right against cruel and unusual punishment. As compensation for the alleged constitutional violation, plaintiff seeks injunctive relief and monetary damages. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

On March 2, 2000, and March 30, 2000, the magistrate judge entered an Order for Special Report and Superseding Order for Special Report respectively, directing that a copy of the complaint and amended complaint in this action be forwarded to the named defendants and requesting that they file a special report addressing the factual allegations of the plaintiff's complaints. The defendants

23

were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

On June 6, 2000, the defendants filed a special report accompanied by affidavits and pertinent documents. Thereafter, plaintiff was notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff was advised of the consequences of any default or failure to comply with *Fed. R. Civ. P. 56. See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff submitted a response to the motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the Court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues

and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

Plaintiff's Complaint

On February 12, 2000, the plaintiff filed this civil rights action, complaining that Sheriff Tirey and Jail Administrator McCluskey refused him medical care for his hernia while he was incarcerated at Walker County Jail. Complaint (Document #1, at 3-4). Plaintiff contends that doctors told defendant McCluskey about the plaintiff's condition and that it needed "immediate attention as soon as possible[. T]his (sic) was almost 2 months ago." *Id.* Plaintiff "filed grievance[s to] the sheriffe (sic) about this many time[s] and he never repl[i]ed back. *Id.*

Plaintiff states that he was physically evaluated by three (3) separate physicians on January 17, 2000, January 19, 2000, and January 31, 2000. After each examination, the attending physician informed defendant McCluskey that the plaintiff needed "immediate medical attention" for his hernia but nothing was done. *Id.* at 4-5. On January 31, 2000, McCluskey informed the third physician that "[Plaintiff has] had this hernia for years and the county [is] not going to pay for it and [he] can go back down there and hurt untill (sic) [he gets] out of jail." *Id.* at 5. On February 9, 2000, the third physician informed the plaintiff that he talked to "Trent McCluskey and he said to make an appointment with a local surgeon.... I was supposed to see a surgeon on . . . 2-10-00 but the doctor called and cancelled." *Id.*

On March 14, 2000, the plaintiff filed an amended complaint (Document # 10, at 4) in which he informed the court that surgery had been performed on his hernia on February 29, 2000. He then related that

> "Trent McCluskey rush[ed] the doctor to release me from the hospital. I left the hospital on 3-2-00...[and went back] to jail in the van....[T]hey were all told by Dr. Richardson before they release me that I need a hospital bed or for me to be elevated some kind of way and for

> me to be walked every day, none of these pr[o]visions were made for me. I was put in [an] insolation (sic) cell bunk flat on my back no way to get up and down to even get to the bathroom....[Plaintiff saw] the nurse early [o]n the morning [of March 3, 2000].... Late that afternoon, . . . [I] began to have very intense pain feet swelling very high fever...manage[d]...to ring buzzer but officer at booking desk only cut buzzer off and didn't check to see what was wrong."

*Id.* at 4-5.

When the nurse came to visit the plaintiff that afternoon, she discovered plaintiff had a temperature of "105" and he was sent to the hospital by ambulance. *Id.* Finally, plaintiff stated he had not eaten for 13 days and nobody cared. *Id.*

Defendants' Special Report

Defendants Tirey and McCluskey deny the plaintiff's material allegations, and assert the following affirmative defenses: (1) failure to exhaust administrative remedies, (2) sovereign immunity, (3) qualified immunity, and (4) failure to state a claim upon which relief may be granted. (Document # 20, at 1, 15-17).

Defendants then recite and include copies of Sheriff Mark Tirey's Walker County Jail policies and procedures relevant to this action.[1] Those policies and procedures are described generally as Health Care Services, which includes the following subcategories: Medical Program Objectives, Inmate Requests for Health Care Services, and Pharmaceutical Management; and

---

[1] *Id.* at 2-3 & 13, the affidavits of defendants Tirey and McCluskey, and Exhibits 3-6. Said policies and procedures were enacted by Sheriff Tirey on October 26, 1998.

Inmate Rights, which includes the following subcategory: Inmate Requests for Grievances. In summary, the aforementioned policies and procedures provide that:[2]

". . . [A]ll inmates confined in the Walker County Jail [are] entitled to a level of health care comparable to that of citizens in the surrounding community in order to ensure the inmates' physical and emotional well-being. All medical care rendered to inmates in the Walker County Jail is delivered under the direction of a licensed health care provider. At no time is any member of the jail staff, or other employee of the Sheriff's Department, ever allowed to summarily deny an inmate medical attention, or ignore a reasonable request for medical services. All decisions regarding medical, dental, or mental health services which require clinical judgments, are the sole province of the responsible health care provider, and are not, at any time, made by members of the jail staff. All persons incarcerated in the Walker County, Alabama jail are guaranteed diagnostic, laboratory, or other treatment services as directed by the responsible health care authority. . . .[3]

[I]nmates incarcerated in the Walker County Jail [are] allowed to request health care services at any time. Such services may be requested either verbally or in writing. Members of the jail staff are required to accept all requests from inmates for medical care. It is the responsibility of the jail officer receiving such a request to relay it to the shift supervisor. The shift supervisor, in turn, has the responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment is always resolved in favor of the inmate, and medical treatment is offered.. . .[4]

[P]erson(s) incarcerated in the Walker County Jail [are] entitled to safe dispensation and administration of prescription and non-prescription medicine. All medication which is prescribed for an inmate by his health care provider during the term of the inmate's incarceration is obtained by the Sheriff's Department and distributed to the inmate according to his doctor's directions The taking of medications by persons incarcerated in the Walker County Jail is strictly voluntary. All inmates have the right to refuse to take medication for any reason, and such refusals are to be respected by members of the jail staff . . . .[5]

[M]embers of the jail staff receive and answer any written grievances or requests made by inmates to the Sheriff, Jail Administrator, or jail personnel. All inmate requests or grievances are to be routed to a shift supervisor and, if necessary, forwarded by the supervisor to any other appropriate authority. Jail personnel are charged with the responsibility of receiving and forwarding grievance forms to the proper authorities at any time they are offered a completed form by an inmate. Inmates are encouraged to first attempt to informally resolve grievances among themselves and members of the staff when possible. However, where this is not possible, the inmate may complete a request form stating his grievance. A staff member answering an inmate grievance must write a response to the inmate on the inmate's request form, giving findings which substantiate or disprove the inmate's complaint and, if applicable, a remedy. A copy of the request, containing the officer's response, should be made and delivered to the inmate, and a copy

---

[2] Document # 20, at 2-4.

[3] *Id.* at Exhibit 3.

[4] *Id.* at Exhibit 4, p. 1-2.

[5] *Id.* at Exhibit 5, p. 1-3.

6

placed in the inmate's jail file. Any inmate dissatisfied with the response he receives to the filing of a grievance may appeal, in writing to the next higher level in the chain of command of the Sheriff's Department.[6]

Defendants state that the plaintiff's incarceration began on December 20, 1999. *Id.* at 4. The defendants were aware that plaintiff had a hernia because the plaintiff was afflicted with the same condition during a previous incarceration at the Walker County Jail in 1998. In fact, although the plaintiff was charged with numerous felony offenses during that incarceration, he was allowed to sign his own bond for the purpose of seeking medical attention for his hernia, although the defendants assert the plaintiff's condition "was not acute."[7]

Plaintiff told the jail staff that "the hernia had 'gone away' or stopped bothering him" when he was rearrested on December 20, 1999. *Id.* at 5. The defendants received no notice that the plaintiff was in any pain due to his hernia until a request for medical treatment was completed by the plaintiff on January 7, 2000. *Id.* The defendants provide no information concerning any treatment afforded the plaintiff between January 7, 2000, and January 26, 2000. Instead, they assert that Walker County Jail began contracting with a new medical services provider named WV Medical Services, and that WV Medical Services began assisting patients in the jail on January 26, 2000. *Id.* at 26.

In support of their position that adequate medical care was provided to the plaintiff, the defendants attach documents purporting to show their knowledge of the plaintiff's medical needs and the actions taken in response to same. It is noted that these documents reflect only those medical services provided to the plaintiff on or after January 26, 2000. *Id.* at Exhibits 7-36. For a complete compilation of the substance of said exhibits, see attached Exhibit A. In short, with the exception

---

[6] *Id.* at Exhibit 6, 1-3.

[7] *Id.* and Exhibit 1.

of plaintiff's January 7, 2000, request, medical personnel responded to each request made by the plaintiff on the day same was made.

On January 26, 2000 (the first day WV Medical Services began treating inmates), Dr. Jones examined the plaintiff and instructed Nurse Gold to set up a surgical consult so that the hernia might be repaired. *Id.* at 6. Nurse Gold attests "[a]fter initially receiving instructions from Dr. Richard Jones to obtain a surgical consult for inmate Lee, I began attempting to do so. Obtaining the services of a physician was difficult due to the fact that several doctors refused to see an inmate. After several calls to surgical doctors in the Jasper area, I was able to schedule an appointment for Mr. Lee with Dr. Bruce Richardson of Jasper, Alabama. This appointment was scheduled for February 9, 2000 at 2 p.m. This appointment was, however, cancelled due to Mr. Lee being scheduled to appear in court on that date and time. The appointment was scheduled for the next available time, February 29, 2000. (Gold affidavit, Document # 20, at 3).

On February 5th, 6th, 7th, 14th, 17th, 18th, 19th, 20th, 24th, and 28th, 2000, the plaintiff informed Nurse Gold that his hernia was hurting and was examined by Nurse Gold on each occasion. *Id.* at 3-5. The treating doctor was contacted concerning every medical visit, and personally looked at the plaintiff on three (3) of the above listed medical visits. *Id.* Plaintiff was prescribed pain medication after most of his medical consultations with the treating doctor and Nurse Gold. *Id.*

On February 29, 2000, the plaintiff was taken to his surgical consult with Dr. Richardson. *Id.* at 3-5. Apparently, the surgery was performed that day. According to Nurse Gold, the surgery was supposed to be on an outpatient basis, but due to postoperative complications, the plaintiff remained at the hospital until March 2, 2000. *Id.* Nurse Gold insists that the only restriction on the plaintiff's "activity was that he should do no heavy lifting. Otherwise, the discharge and home care

8

instruction given by Dr. Richardson advised that Mr. Lee could resume his previous activities. At no point did Dr. Richardson require the use of any specific equipment such as a hospital bed, or give any other requirements outside normal postoperative outpatient care." *Id.*

On March 3, 2000, Nurse Gold examined the plaintiff and noted that he had an extremely high temperature. *Id.* at 6. Dr. Richardson ordered that plaintiff be immediately transported to the emergency room. *Id.* The plaintiff was treated at the hospital and released back into "the custody of the Walker County Sheriff's Department that same day." *Id.* Nurse Gold continued to monitor plaintiff's recovery, which proceeded well, except that plaintiff refused to bathe, eat, or take his blood pressure medication as ordered. *Id.* at 7. Nurse Gold approached the plaintiff about his eating habits on March 13, 2000, and was informed by the plaintiff that "he did not like the food at the jail, but that I should not be worried about him not eating, since he had been eating cookies which had been given to him." *Id.*

On April 10, 2000, Jail Administrator Trent McCluskey requested that Nurse Gold examine the plaintiff because of his complaints of pain and illness. *Id.* However, when Nurse Gold questioned the plaintiff concerning what problems he was experiencing, plaintiff responded, "'I am fine, why do you ask?' [The plaintiff then] went on to state that everyone worried about him because he did not eat his meals, that they thought he was sick, but that he sometimes just ate sweets for a while before going back to his meals." *Id.*

Sheriff Tirey asserts that "[a]t no time during the course of treatment for his hernia did any member of the jail staff ever inform Mr Lee, or a physician treating Mr. Lee, that he would not be treated, or receive surgery due to the Sheriff's Department lack of funds or a refusal to pay. (Tirey affidavit, Document # 20, at 4). Jail Administrator Trent McCluskey also denies that he acted, or

9

caused any one else to act, "in any manner so as to deprive inmate Malcolm Lee of any type of medical care or treatment during his incarceration in the Walker County, Alabama Jail." (McCluskey affidavit, Document # 20, at 5). McCluskey does admit that he and Dr. Jones discussed the plaintiff's hernia after a January 26, 2000, medical examination. *Id.* at 4. However, McCluskey states that he was not "informed by any physician that Mr. Lee was in need of immediate surgery, or that he had been in need of surgery for his hernia for the previous two months. I was, instead, informed by the treating physician that Mr. Lee's situation was not presently acute, and that the pain he was suffering from could be managed through medication." *Id.*

Finally, McCluskey attests "inmate Lee was aware, during the entire time of his incarceration . . . of the jail's grievance procedure. This procedure is made known to inmates at the time they are booked in to the jail. However, contrary to his statement in his Complaint, inmate Lee never filed any type of grievance regarding his medical care or treatment. Further, Mr. Lee complained regarding specific problems, and made requests for medication, but never filed any type of formal grievance." *Id.* at 5-6.


Plaintiff's Response

Plaintiff agrees that he was allowed to sign his own bond in 1998. (Document # 22). However, plaintiff contends the defendants fail to reveal plaintiff was allowed to do so because "after seeing Dr. Cline for over 3 months and suffering[, the defendants] refuse me medical treatment . . . . [T]hey also don't . . . that when I complain[ed] about it[,] they remove[ed] me out of population and lock[ed] me up for 3 solid day[s] in a 4 x 10 cell that was so cold my [arthritis] lock[ed] up and I fel[l] in the floor because I couldn't move. Trent McCluskey open[ed] the door

with Dr. Cline and [a] nurse . . . I told the nurse what was wrong[, and] Trent said nothing is wrong with him just let [him] lay there and suffer. Shortly, after that they call me . . . to the front . . . [and] let me sign my own bond. I never told [them] I was going to seek help because I couldn't afford it. I'm a homeless drug addict. They just threw me on the street to keep from paying the medical expense." *Id.*

After his 1998 release, plaintiff asserts that he couldn't work because of the shape he was in, and began using more drugs to "kill the pain." *Id.* "My system was so full of drugs for the past year doing drugs 24:7 doing crack cocaine (sic) I couldn't feel any pain . . . I guess I did think [my hernia] was gone." *Id.* at 2. After his December, 1999 arrest, "and after being in jail[,] I guess the drugs cleared out of my system[. Having nothing in it, I start[ed] feeling pain[,] only this time the knot became big." *Id.*

Plaintiff also attests that he was examined by several different doctors, all of whom recommended "medical attention as soon as possible." *Id.* After his surgery, plaintiff concedes that the doctor did not "write [an] order for a special bed . . . [but argues that the doctor] told them before we left the hospital and they said they would make [provisions] for me . . . ." *Id.* Finally, plaintiff believes that Nurse Gold is lying perhaps because the defendants threatened her. *Id.*

## CRUEL AND UNUSUAL PUNISHMENT

*Preoperative Complaints*

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct 285, 50 L.Ed.2d 251 (1976). The conduct of prison officials must run counter to evolving standards

11

of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated in *Estelle, supra*, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980). Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). *See also Estelle v. Gamble, supra*, at 106-08.

Defendants have pled the defense of qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There is no dispute that the defendants were acting within their discretionary authority at all times relevant to this case. Therefore, the issue before the court is whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable sheriff or a reasonable detention officer would have known. In judging the reasonableness of the defendants' actions, the court must consider the law established at the time of the incidents made the basis of this action, as well as "the information possessed by the official at the time the conduct occurred." *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996)(citation omitted).

At the time of plaintiff's incarceration in the Walker County Jail, it was clearly established that a jail official violates a pretrial detainee's Fourteenth Amendment right to due process and a convicted person's Eighth Amendment protection against cruel and unusual punishment if he acts with deliberate indifference to the serious medical needs of the inmate.[8] *See, e.g., Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988)(citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)). Specifically, the case law was clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994) ("[K]nowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference."); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988)("[W]ith evidence of knowledge [of the prisoner's need for medical care] the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference."); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[K]nowledge for the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference").

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit noted in *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995):

---

[8] A government official's treatment of a pretrial detainee is governed by the due process clause of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), while the cruel and unusual punishment clause of the Eighth Amendment governs an officials' treatment of a convicted prisoner. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Eleventh Circuit has held that the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate in difference to serious medical needs. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. "A doctor's decision to take an easier and less efficacious course of treatment" also constitutes deliberate indifference. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference. (citations omitted)

The Eleventh Circuit also held in *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.), *vacated*, 931 F.2d 711 (11th Cir. 1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191(11th Cir. 1994):

> The standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act.

Case law had also clearly established before this action arose that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186 ("cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem"); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994) (sheriff was not entitled to qualified immunity where he intentionally delayed treatment that sheriff knew had been prescribed for inmate's serious medical needs); *Thomas*, 847 F.2d at 773 (failure to provide prompt attention to serious medical needs by delaying medical

14

treatment for non-medical reasons constitutes deliberate indifference). Delay in access to medical treatment can violate the Eighth Amendment, *Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir) *per curiam, cert. denied*, 496 U.S. 928, 110 S. Ct. 2624, 110 L.Ed.2d 645 (1990).[9]

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187-88. A medical need is considered serious when delay results in an inmate's suffering "a lifelong handicap or permanent loss." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill, supra*, at 1188. Further, whether the length of the delay establishes deliberate indifference "depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir. 1994). Therefore, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

The initial question for this Court is whether the plaintiff's hernia constituted a serious medical need. In *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th.Cir. 1994), the Eleventh Circuit stated, that "a serious medical need for the purposes of deliberate indifference is one for which a physician has diagnosed treatment or one so obvious that even a lay

---

[9] reiterated in *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Also cited in *McElligott*, is *Aldridge v. Montgomery*, 753 F.2d 970, 972-73, (11th. Cir. 1985) wherein a directed verdict in favor of the defendants was reversed because "officers failed to provide an ice pack and aspirin for pain caused by bleeding cut."

person would recognize the necessity of a physician's attention. This court finds, as a matter of law under the facts of the present case, that the plaintiff suffered from a serious medical need and that the defendants in this action had notice of the plaintiff's serious medical needs. However, it is apparent that the attending physician diagnosed the plaintiff's condition as one which necessitated surgery, but not emergency surgery. Only one (1) month passed between the day the jail doctor recommended surgery and the day the plaintiff's hernia was repaired. In between that time period, the plaintiff's pain level was constantly managed by the jail doctor and the jail nurse. It is of consequence that the same doctor who took the aforementioned path of treatment also did not hesitate to inform the jail nurse to have the plaintiff taken to the emergency room when informed over the telephone that plaintiff was experiencing severe postoperative fever. It stands to reason that said doctor would have recommended the same modus operandi with regard to immediate surgery if the plaintiff's medical condition had warranted it.

It is also noted that plaintiff admits that his hernia was not hurting when he was arrested on December 20, 1999, and did not begin to hurt until the drugs in the plaintiff's system were eventually expelled. While plaintiff contends he requested medical attention in writing, he does not state when that initial request took place. Nor does he deny that said initial communication was on January 7, 2000, as attested to by the defendants. A review of the substance of that request does not show any indication that plaintiff is complaining about a hernia. Even if the plaintiff waited 19 days to see a physician concerning his complaints, he has not and cannot show that said delay caused him any detrimental effect. The plaintiff has not filed any action against the medical staff at Walker County Jail. Had he done so, said action would be due to be dismissed for failure to state a claim upon which relief could be granted as plaintiff's claims against the medical staff are a difference opinion of

between the plaintiff and the medical staff, or a cause of action for negligence against the staff, neither of which is actionable pursuant to 42 U.S.C. § 1983. The plaintiff has failed to state a cause of action against defendants Tirey and McCluskey with regard to a denial or delay of medical care between the date of his 1999 incarceration to the date of his surgery. As such, the plaintiff's claim is due to be dismissed, and summary judgment is due to be granted in the defendants' favor. To the extent same may be necessary, the defendants' are also due to be granted qualified immunity.

### *Postoperative Complaints*

Plaintiff argues that his postoperative care at Walker County Jail was woefully inadequate, thereby subjecting him to cruel and unusual punishment. However, plaintiff does not deny that he was aware of, but did not, pursue his complaints by way of the Walker County Jail grievance procedure. In fact, he attests that he wrote several complaints to Sheriff Tirey regarding his preoperative complaints. Plaintiff was clearly aware of the procedures available to him and chose to ignore them.

In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit Court of Appeals discussed the amendment of 42 U.S.C. § 1997e(a) by the PLRA, concluding that "Congress now has mandated exhaustion" and that "exhaustion is now a pre-condition to suit [by prisoners]." 159 F.3d at 1325-26. The Court of Appeals for the Eleventh Circuit has also made it very clear that a district court may not waive this exhaustion requirement. *Id.* at 1326. The plaintiff failed to utilize the Walker County Jail's inmate grievance policy to resolve his complaints regarding his postoperative medical care. Plaintiff's claims regarding his postoperative medical care while incarcerated in the

17

Walker County Jail are therefore due to be dismissed without prejudice due to plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

## OPINION

Accordingly, for the reasons stated above, defendants' special report is due to be treated as a motion for summary judgment and, as such, GRANTED as follows:

1. The plaintiff failed to state a claim upon which relief can be granted with regard to his preoperative medical care claims against defendants Tirey and McCluskey. As such, said claims are due to be DISMISSED WITH PREJUDICE. To the extent same is necessary, defendants' Tirey and McCluskey are also due to be granted qualified immunity.

2. The plaintiff failed to exhaust the administrative remedies available to him at the Walker County Jail concerning his postoperative medical care claims against defendants Tirey and McCluskey. As such, plaintiff's claims are due to be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

A separate Order shall be entered contemporaneously herewith.

**DONE**, this the  9th  day of  April , 2002.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE